1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JOSHUA CHAVIRA,

                            Plaintiff,

     v.

NEV. DEPT. OF CORRECTIONS, *et al.*,

                        Defendants.

Case No. 2:22-cv-00927-MMD-MDC

ORDER

## I.    SUMMARY

*Pro se* Plaintiff Joshua Chavira, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), brings this action for violation of his Eighth Amendment rights under 42 U.S.C. § 1983. (ECF No. 5 ("Complaint").) Before the Court is Defendant Raynay O'Connor's unopposed motion for summary judgment. (ECF No. 20 ("Motion").) The Court finds that Plaintiff exhausted his administrative remedies, but grants Defendant's Motion because there is no genuine dispute of material fact as to whether O'Connor was deliberately indifferent to Chavira's serious medical needs.

## II.    BACKGROUND

In his Complaint, Chavira alleges that prison mental health care providers violated his civil rights between 2019 and 2021 at High Desert State Prison ("HDSP") and Ely State Prison ("ESP"), contributing to two separate suicide attempts. (ECF No. 5.) The Court previously screened the Complaint and permitted Plaintiff to proceed with Eighth Amendment claims for deliberate indifference to serious medical needs against Defendants Raynay O'Connor[1], a psychological counselor at HDSP, and "John Doe," an

---

[1]Plaintiff refers to Defendant O'Connor as "Ms. Occonner" in the Complaint. (ECF No. 5.)

1    unidentified provider at ESP, if and when Plaintiff learned his identity.[2] (ECF No. 4.) The

2    Court dismissed Defendant NDOC from the action with prejudice. (*Id.*)

3        The following facts are supported by the verified Complaint or other evidence in

4    the record and are undisputed unless otherwise noted.[3] Chavira has "documented

5    serious mental health needs, including but not limited to severe depression, anxiety and

6    nightmares." (ECF No. 5 at 2.) He was transferred into NDOC custody in April 2019. (*Id.*

7    at 4-5.) During Chavira's classification process, the psychiatric medications he was

8    previously taking at Clark County Detention Center were approved and ordered to HDSP.

9    (*Id.* at 3.) In May 2019, Plaintiff was placed into segregation at HDSP pending his transfer

10   to ESP. (*Id.*) NDOC offender summary reports include a note that Plaintiff was placed "in

11   HDSP Segregation since 05/23/19 due to high [risk factor assessment] . . . Inmate

12   attempted to escape while being transported from New Mexico to Las Vegas, slipped out

13   of his restraints, strangled one of the transport officers and then attempted to grab the

14   officer's shotgun." (ECF No. 20-1 at 4.)

15       On at least five separate occasions between June and September 2019,

16   Defendant O'Connor—in her role as an HDSP mental health provider—came to Chavira's

17   cell to conduct scheduled mental health visits. (ECF No. 5 at 3-5.) On each of those

18   occasions, Chavira alleges that he told O'Connor that segregation worsened his

19   depression and anxiety (*id.*), although O'Connor disputes that he conveyed that his

20   symptoms were worsening (ECF No. 20-2). Chavira refused to be seen on at least one

21   scheduled visit. (ECF No. 5 at 4-5.)

22       Plaintiff remained in segregation until he was transferred to ESP in December

23   2019, where he was placed in a "psych program unit" upon arrival. (*Id.*) In early 2020, he

24

25       [2]Plaintiff has not moved to substitute a named defendant for this Doe defendant in
26   the time since the Court screened the Complaint.

27       [3]The Court accepts the factual assertions made in Plaintiff's *pro se* complaint as
     summary judgment evidence, because the Complaint was verified under penalty of
28   perjury and such facts are based on personal knowledge. (ECF No. 5 at 6.) *See* Fed. R.
     Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for
     summary judgment] must be based on personal knowledge . . . .").

1   underwent a "brief mental health evaluation," during which he again complained of

2   depression, anxiety, and nightmares. (*Id.*) His medications were adjusted. (*Id.*) In March

3   2020, Plaintiff was placed in isolation at ESP, which again exacerbated his anxiety and

4   depression. (*Id.* at 6.) In May 2020, Plaintiff attempted suicide by "ingesting what he

5   believed to be a toxic and fatal level of personal medications" and was hospitalized. (*Id.*)

6   Plaintiff subsequently moved between different units and levels of isolation at ESP for the

7   next several months, before again attempting suicide in November 2020.[4] (*Id.* at 6-8)

8   After Plaintiff was discharged from the hospital in November 2020, he was sent

9   back to HDSP and again placed in segregation. (*Id.*) Between November 2020 and May

10  2021, O'Connor conducted several mental health visits with Chavira[5], but Plaintiff alleges

11  that his mental health symptoms "continue[d] to worsen and remain untreated or

12  [un]monitored" due to isolation. (*Id.* at 9.)

13  Defendant O'Connor now moves for summary judgment, arguing that (1) Chavira

14  has failed to exhaust his administrative remedies as required under the Prison Litigation

15  Reform Act ("PLRA"), and (2) Plaintiff's allegations do not rise to the level of constitutional

16  violations. (ECF No. 20 at 1.) Plaintiff did not file an opposition to the Motion, despite two

17  extensions of time.[6]

18  
19  [4]During these months, Plaintiff alleges that he underwent another mental health
    evaluation by "John Doe," who notified him that although his depression, anxiety and
20  nightmares were worsening, "he would not receive any medication." (*Id.* at 8.)

21  [5]Plaintiff alleges that she visited less than three times (*id.* at 8-9), while Defendant
    presents a declaration and medical records indicating that she visited eleven times (ECF
22  Nos. 20-2, 23).

23  [6]Although Plaintiff did not respond to Defendant's Motion, several other filings—by
    both Plaintiff and Defendant—have followed the Motion. O'Connor filed Chavira's
24  confidential medical records as Exhibit C to the Motion (ECF Nos. 21, 23, 24). Based on
    Chavira's subsequent indication that he had not received or had an opportunity to review
25  those records (ECF No. 23), the Court twice extended the deadline for Plaintiff to file his
    opposition to summary judgment (ECF Nos. 27, 30). The Court also directed Defendant
26  to provide Plaintiff with a copy of Exhibit C and to file a notice of compliance that she had
    done so (ECF No. 30), which Defendant submitted on January 31, 2024 (ECF No. 31).
27  On February 7, 2024, Defendant filed a notice indicating that Chavira declined to attend
    his appointment to review Exhibit C at the time set for him to do so at HDSP. (ECF No.
28  32.) Chavira signed a refusal form. (ECF No. 32-1.) Since that time, there have been no
    other filings in this case.

1    **III.    DISCUSSION**

2         The Court first addresses administrative exhaustion under the PLRA and finds as

3    a matter of law that Defendant fails to prove non-exhaustion as an affirmative defense.

4    The Court next turns to the merits of Plaintiff's Eighth Amendment claim. Because there

5    is no genuine dispute as to any material fact, the Court grants summary judgment for

6    Defendant O'Connor on the merits.

7         **A.    PLRA Exhaustion**

8         Defendant moves for summary judgment on the basis that Plaintiff failed to exhaust

9    his administrative remedies before filing the Complaint, as required by the PLRA. (ECF

10   No. 20 at 4-6.) In particular, O'Connor argues that in both of the grievance processes

11   Chavira initiated, he objected to his administrative segregation—not to his mental health

12   treatment—and thus failed to put NDOC on notice of the claims in this action. (*Id.* at 5-6.)

13   Viewing the record in the light most favorable to Plaintiff, however, the Court disagrees.

14        Under the PLRA, "[n]o action shall be brought with respect to prison conditions

15   under section 1983 of this title, or any other Federal law, by a prisoner confined in any

16   jail, prison, or other correctional facility until such administrative remedies as are available

17   are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust administrative remedies is

18   "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d

19   1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)).

20   Administrative exhaustion is subject to a burden-shifting analysis. *See id.* "If undisputed

21   evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a

22   defendant is entitled to summary judgment under Rule 56." *Id.* However, "[i]f material facts

23   are disputed, summary judgment should be denied, and the district judge rather than a

24   jury should determine the facts." *Id.* Once a defendant demonstrates that a plaintiff did

25   not exhaust available administrative remedies, the burden shifts to the plaintiff to present

26   evidence "showing that there is something in his particular case that made the existing

27   and generally available administrative remedies effectively unavailable to him." *Id.* at 1172

28

4

(citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n. 5 (9th Cir. 1996)). The ultimate burden of proof remains with the Defendant. *See id.*

The PLRA requires *proper* exhaustion. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) ("proper exhaustion" means "using all steps the agency holds out"). *See also Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016) (noting that to properly exhaust their administrative remedies, a plaintiff must adhere to critical procedural rules). This means that in general, prisoners must follow institutional grievance procedures. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock,* 549 U.S. 199, 218-19 (2007) (holding that prisoners could not be required to name in their grievance all defendants where the prison's grievance procedures did not require them to do so).

A prisoner need only exhaust *available* administrative remedies. *See Ross v. Blake*, 578 U.S. 632, 633 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"). And a prison grievance need not contain all the elements or specificity of a future legal claim in order to satisfy the exhaustion requirement. *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("A grievance need not include legal terminology . . . unless . . . in some way needed to provide notice of the harm being grieved. A grievance also need not contain every fact necessary to prove each element of an eventual legal claim."). This is because "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation." *Id.*

NDOC's Administrative Regulation ("AR") 740 sets out the procedures for inmate grievances in its institutions and provides a tiered system of informal, first-level, and second-level review. (ECF No. 20-3.) A prisoner may resolve a claim through the NDOC administrative process when they can "factually demonstrate a loss or harm." (*Id.* at 18.)

1    Here, Defendant relies primarily on the grievance records specifically attached as

2  an exhibit (ECF No. 20-4) to her Motion to argue that Chavira failed to exhaust his NDOC

3  administrative remedies. (ECF No. 20 at 5-6.) As an initial matter, however, the Court

4  notes that some relevant grievance records are absent from Defendant's exhibit.

5  Importantly, additional related records are attached to Plaintiff's previously-filed motion

6  requesting the Court find NDOC's administrative remedies unavailable, which Plaintiff

7  signed as a declaration under penalty of perjury.[7] (ECF No. 3.) The non-overlapping

8  documents attached to that earlier motion consist of numerous stamped grievance

9  records from ESP and HDSP—including several official denials from prison coordinators.[8]

10  (*Id.* at 12-32.) As they are part of the record, the Court also considers these records in its

11  summary judgment review. *See* Fed. R. Civ. P. 56(c)(3) (providing that "[t]he Court need

12  consider only the cited materials, but it may consider other materials in the record"). *See*

13  *also* Fed. R. Civ. P. 56(c)(1)(A) (providing that a party may cite to "particular parts of

14  materials in the record, including . . . documents, electronically stored information . . . or

15  other materials").

16

17  _____

[7]The Court denied Plaintiff's motion on exhaustion, filed in June 2022, as

18  premature in its screening order because Defendant had not yet appeared in the action or raised the issue. (ECF No. 4 at 7-8.) Among other things, Plaintiff argued in the motion

19  that prison officials made an error by repeatedly denying his second grievance claim because it was not properly considered a duplicate, and that he was unfairly denied the

20  opportunity to file additional grievances based on NDOC's custom and practice of denying review after improper grievances are received. (ECF No. 3 at 9-11.) While the Court

21  primarily considers the records included in Plaintiff's motion for summary judgment purposes, the Court also considers Plaintiff's statements therein to the extent those

22  statements are based on personal knowledge and made in a declaration under penalty of perjury. *See* Fed. R. Civ. P. 56(c)(4).

23  [8]Plaintiff's records are primarily grievance forms from ESP, while Defendant's

24  exhibited records are largely from HDSP, consistent with the declaration from HDSP Associate Warden Frank Dreesen verifying the authenticity of Defendant's Exhibit E (ECF

25  No. 20-1). Many of the documents attached to Plaintiff's earlier filing are directly associated with the numbered grievance processes discussed in Defendant's Motion but

26  are not included as exhibits to the Motion. For example, Defendant's exhibit includes HDSP's response to Chavira's *second*-level grievance (ECF No. 20-4 at 11) but does not

27  include the related records for his *first*-level grievance. Those first-level records are attached in Plaintiff's filing. (ECF No. 3 at 17-19.) Given the consistency between

28  Plaintiff's exhibits and the records later submitted by Defendant, there is no reason to question the authenticity of Plaintiff's documents.

The full set of HDSP and ESP records demonstrates that Chavira initiated at least two separate grievance processes. He submitted his first grievance (Grievance No. 2006-31-01163) at the informal level in December 2019, and wrote at that time, "I have been in Ad/seg for 7 months pending transfer," adding, "I have suffered physically, mentally, and spiritually from being housed in solitary confinement for so long." (ECF No. 20-4 at 25.) Consistent with AR 740, Chavira later submitted a first-level grievance appeal at ESP in September 2020, writing, "[t]he time I spent in solitary confinement waiting to be transported made me severely depressed to the point of becoming suicidal, since starting this grievance process I have actually attempted suicide I was hospitalized and knew I was headed this way mentally." (ECF No. 3 at 17-18.)  He further stated that this mental impact "is why I grieved the misuse of solitary confinement and begged for help." (*Id.*) In denying Chavira's first-level grievance, prison officials referred to his "requests for transfer/assistance due to . . . mental health concerns" and noted the dates on which he had been seen for mental health consultation. (*Id.* at 19.)

Neither Chavira's first-level grievance form nor the denial are included in Defendant's exhibited records. However, Defendant points to a snippet of Chavira's subsequent *second*-level grievance from November 2020. There, Plaintiff wrote, "[m]y issue is not with treatment from mental health services. I stated at the informal level I was receiving treatment from mental health. Again, the issue is the length of time I was subjected to solitary confinement *and its detrimental effect on my mental health and wellbeing*." (ECF No. 20-4 at 11 (emphasis added).) Chavira concluded, "[Seven] months to transfer one inmate is not reasonable, neglegent [sic] and amounts to cruel and unusual punishment." (*Id.*)[9]

Prison records show that Chavira also submitted another grievance at the informal level (Grievance No. 2006-31-15904) to HDSP in 2021. (*Id.* at 16.) That grievance was

---

[9]HDSP denied the second-level grievance on November 29, 2021, with the comment that Chavira was placed in administrative segregation pending transfer to ESP in 2019 because he was determined to have a potential for "violence, escape, or disruption of institutional operations" due to his attempted escape while being transported from New Mexico to Las Vegas. (*Id.* at 10.)

1   deemed improper as a duplicate of Grievance No. 2006-31-01163, but Chavira stated in

2   a written response to the denial—and emphasized again in his later declaration to the

3   Court (ECF No. 3) that the new grievance pertained to a separate set of circumstances.

4   (ECF No. 20-4 at 16.) In particular, he stated that he had been transferred to ESP after

5   initiating his previous grievance but had now returned to HDSP and spent "an additional

6   9 months in solitary confinement" where he "continue[d] to mentally deteriorate daily."

7   (ECF Nos. 3, 20-4 at 16-19.)

8        In her Motion, Defendant argues that both Grievance No. 2006-31-01163 and

9   Grievance No. 2006-31-15904 pertain to Plaintiff's "classification to segregation based on

10  his sentence structure or conduct" and that Chavira's statements in his second-level

11  appeal of Grievance No. 2006-31-01163 "absolve" NDOC's mental health services and

12  its providers from wrongdoing. (ECF No. 20 at 5-6.) But the full grievance record

13  demonstrates that (1) Chavira repeatedly emphasized the negative impact of

14  administrative segregation on his mental health, including by specifically referencing a

15  suicide attempt, and (2) prison officials operated under the belief that Chavira's

16  grievances were about the mental impact of administrative segregation, citing dates of

17  care. Chavira also repeatedly asserted to NDOC that the circumstances of his

18  segregation amounted to "cruel and unusual punishment" given his mental state. (ECF

19  No. 20-4 at 11.) Plaintiff's grievances were thus based on the same underlying context

20  now supporting his Eighth Amendment medical indifference claims—and his brief

21  statement at the final stage of the grievance process that his issue was not merely about

22  receiving mental services *per se* did not somehow release NDOC's medical personnel

23  from all future claims. O'Connor points to no portion of AR 740 that specifically requires

24  information beyond that included in Chavira's existing grievances. *See*, *e.g.*, *Jones,* 549

25  U.S. at 219 (holding that defendants need not be named for exhaustion purposes where

26  prison procedures do not specifically require such information). The grievance process is

27  intended to alert prisons to conditions of confinement issues, "not to lay groundwork for

28  litigation," and Defendant fails to demonstrate how Chavira's grievances were inadequate

1    for this purpose. *See Griffin*, 557 F.3d at 1120 (holding that a grievance need not state

2    every relevant fact, nor state a legal cause of action).

3         In sum, the record demonstrates that Chavira followed proper grievance

4    procedures through all levels of review as to at least one essential grievance[10] and that

5    Chavira's grievances were sufficiently specific to provide notice of the relevant issue.

6    Viewing all evidence in the light most favorable to Plaintiff, the Court thus concludes as a

7    matter of law that O'Connor fails to prove the affirmative defense of non-exhaustion. *See*

8    *Albino*, 747 F.3d at 1166, 1176 (noting defendants' initial burden to prove the affirmative

9    defense). Accordingly, the Court denies O'Connor's request for summary judgment on

10   the issue of exhaustion. And because the Court finds no genuine dispute in the record

11   that Chavira did in fact exhaust his administrative remedies under the PLRA, it further

12   grants summary judgment to Plaintiff on O'Connor's affirmative defense. *See id.* at 1170,

13   1176 (noting that "[i]f a motion for summary judgment [on the basis of failure to exhaust]

14   is denied, disputed factual questions relevant to exhaustion should be decided by the

15   judge" and further finding that a court may properly enter summary judgment *sua sponte*

16   for the nonmoving party if the defendant fails to show a genuine dispute).

17        **B.    Eighth Amendment Deliberate Indifference to Serious Medical Needs**

18        The Court turns to the merits of Plaintiff's Eighth Amendment medical indifference

19   claim and finds no genuine factual dispute that O'Connor's conduct did not amount to a

20   constitutional violation. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317,

21   323-24 (1986) (explaining the summary judgment standard and its purpose to terminate

22   factually unsupported claims).

23        The Eighth Amendment prohibits the imposition of cruel and unusual punishment

24   and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity,

25   and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the

26

27        [10]The record further supports the unavailability of a remedy to the extent that
28   Grievance No. 2006-31-15904 pertains to a unique time period but was denied as a
     duplicate. (ECF Nos. 3, 20-4 at 16-19.) *See Ross*, 578 U.S. at 633.

1   Eighth Amendment when he acts with "deliberate indifference" to the serious medical
2   needs of an inmate. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an
3   Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the
4   deprivation was serious enough to constitute cruel and unusual punishment—and a
5   subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th
6   Cir. 2012).

7           To establish the first prong, "the plaintiff must show a 'serious medical need' by
8   demonstrating that 'failure to treat a prisoner's condition could result in further significant
9   injury or the unnecessary and wanton infliction of pain.'" *Jett v. Penner*, 439 F.3d 1091,
10  1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050 (9th Cir.1991)). To satisfy
11  the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to
12  respond to a prisoner's pain or possible medical need and (b) harm caused by the
13  indifference." *Id*. "Indifference 'may appear when prison officials deny, delay or
14  intentionally interfere with medical treatment, or it may be shown by the way in which
15  prison physicians provide medical care.'" *Id*. (quoting *Hutchinson v. United States*, 838
16  F.2d 390, 392 (9th Cir.1988)). When a prisoner alleges that delay of medical treatment
17  evinces deliberate indifference, the prisoner must show that the delay led to further injury.
18  *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)
19  (holding that "mere delay of surgery, without more, is insufficient to state a claim of
20  deliberate medical indifference").

21          Defendant's Motion is unopposed, and no evidence otherwise raises a genuine
22  dispute. As to the objective analysis, there is no evidence to suggest that O'Connor
23  herself was responsible for any deprivation amounting to a constitutional violation or the
24  wanton infliction of pain. *See Snow*, 681 F.3d at 985. As to the subjective analysis, there
25  is also no evidence to suggest that O'Connor committed a purposeful act or failed to
26  respond to Chavira's medical needs, or that the alleged harm—in this case, the harm of
27  continued administrative segregation—resulted *from* O'Connor's indifference. *See Jett*,
28  439 F.3d at 1096.

To start, the record shows that Defendant O'Connor had a narrow range of responsibilities in providing Chavira's medical treatment and that she comported with those responsibilities. As a corrections counselor and psychologist, she had authority to review Plaintiff's mental health status while in segregation and to refer him for reviews of his treatment plan, but she is not a psychiatrist and at no time had authority to prescribe medications. (ECF Nos. 20-2 at 3-5.) Chavira's medications were managed by separate licensed psychiatrists. (*Id.*) O'Connor conducted numerous routine mental health checks with Chavira at HDSP from June 2019 through September 2019 and November 2020 through April 2022. (*Id.* at 3.) On many of those dates, O'Connor states that Plaintiff reported to her that he had no mental health concerns. (*Id.* at 4-6.) Medical records filed under seal show that O'Connor kept notes on her visits; those records do not indicate that Plaintiff reported concerns for which he was denied treatment, while he received visits on more than ten occasions. (ECF No. 23-1.) Even if Plaintiff did report worsening mental health as he alleges in his Complaint, however, O'Connor's role was primarily confined to monitoring his condition. And Defendant did not provide care to Plaintiff during the period when he was at ESP from November 2019 to November 2020, when he twice attempted suicide (ECF No. 20-2 at 3.) Defendant states in her uncontested declaration that she stopped conducting regular mental health checks with Plaintiff in June 2021 due to Plaintiff's "continued stability without taking psychiatric medications and lack of mental health concerns." (*Id.* at 4.)

Moreover, Plaintiff acknowledged in his second-level appeal for Grievance No. 2006-31-01163 that he was receiving mental health treatment while in administrative segregation, primarily taking issue with the impact of that segregation on his worsening mental health. (ECF No. 20-4 at 11.) But O'Connor had no direct authority to change Plaintiff's custody classification—she was assigned as his counselor *because* of his classification status. (ECF No. 20-2.) Prison records indicate that Chavira was housed in administrative segregation because of the incident which occurred during transport from New Mexico, and it is not clear how O'Connor's review of Plaintiff's anxiety and

1   depression could have resulted in a change to his classification—even indirectly. (ECF

2   No. 20-1 at 4.) In other words, while limitations associated with solitary confinement may

3   lead to Eighth Amendment liability, *see, e.g.*, *Spain v. Procunier*, 600 F.2d 189, 199 (9th

4   Cir. 1979), there are no evidence to suggest that O'Connor acted unreasonably in this

5   context or that treatment that was "medically unacceptable under the circumstances," *see*

6   *Jackson v. McIntosh*, 90 F. 3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds*

7   *by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014).

8       In sum, there are no material disputed facts supporting Plaintiff's claim that

9   O'Connor was deliberately indifferent to his serious mental health conditions when she

10  conducted her health visits. The Court thus grants summary judgment for Defendant.[11]

11  **IV.   CONCLUSION**

12      The Court notes that the parties made several arguments and cited to several

13  cases not discussed above. The Court has reviewed these arguments and cases and

14  determines that they do not warrant discussion as they do not affect the outcome of the

15  issues before the Court.

16      It is therefore ordered that Defendant's unopposed motion for summary judgment

17  (ECF No. 20) is granted because there is no genuine factual dispute regarding Plaintiff's

18  Eighth Amendment claim.

19      It is further ordered that Defendant O'Connor's motion for leave to file exhibit under

20  seal (ECF No. 21) is granted.

21      The Clerk of Court is directed to enter judgment accordingly and close this case.

22      DATED THIS 23rd Day of August 2024.

23

24  _____

25  MIRANDA M. DU
    CHIEF UNITED STATES DISTRICT JUDGE

26

27      [11]Because Plaintiff has not moved to substitute the remaining Doe defendant—and
    because the factual allegations against that Defendant are particularly sparse, as is the
28  evidence in the record against him—the Court also dismisses that claim. *See Celotex*,
    477 U.S. at 323-24.